Good morning. May it please the court. My name is Heather Quick and I represent the defendant, Ryan Haynes. Mr. Haynes was convicted of felon in possession of a firearm after a jury trial and sentenced to a statutory maximum sentence of 10 years. He raises several challenges to his conviction and sentence. Today, I will focus on the challenge to the motion to suppress and his sentencing claim. First, the district court erred in denying Mr. Haynes' motion to suppress. Initially, the encounter started as a traffic stop of this party bus, but the stop quickly transitioned into an investigative seizure to determine of the smell of marijuana coming from the bus. Because the officers lacked particularized suspicion that Mr. Haynes was involved in the use or possession of marijuana, the seizure was unlawful. Also, the search was unlawful as well. First, the seizure as part of the investigation into marijuana was unlawful. In order to have seized Mr. Haynes, continue to seize him, not let him leave the scene and order him off the bus, law enforcement needed reasonable suspicion that he was involved in using the marijuana that was smelled on the bus. Part of that I think is clearly true, but I thought our cases say you can order passengers off the bus. Not that you can frisk them or search their luggage and so forth, except without more. But in the course of a traffic stop, you can have passengers exit. Yes. So, based off of Maryland v. Wilson, and this court has said, during a traffic stop, just ordering someone out of the vehicle is a de minimis intrusion. But that's not what we have here. And in the court in Maryland v. Wilson, in a footnote, explicitly stated, we're not holding that law enforcement officers are allowed to pull a passenger off the bus and investigate them for a different crime than was the subject of the traffic stop. It was very limited to just ordering a passenger out of the vehicle. And the government's position was But it seems to me that makes an interesting dividing line here, because we have the he emptied his own pockets factor. Right. But So he's properly taken off the bus. He construes the situation apparently as he ought to empty his pockets, or maybe he just wanted to preemptively establish innocence of this, that, or the other. But that, it wasn't like they patted him down immediately. Right. But there is a very important back and forth that happened before he pulled that out of his pocket. And the district court even acknowledged it appeared at that point to anyone that a search was coming. I think it's important to really analyze the back and forth that happened as Mr. Haynes was ordered off the bus. Mr. Haynes, before he was even ordered off the bus, tried to ask if he could leave and then was told no, which I think is, I would disagree that they were allowed to pull him off the bus. I understand that generally passengers can be ordered out, but this really wasn't a traffic stop anymore. And in the Henderson case cited in our briefs from the Fifth First Circuit, there the court acknowledged, if it is truly just a Maryland versus Wilson, have the passenger exit the vehicle, there the passenger should be free to leave, unless they have a separate basis for holding the person there. Here, even though the traffic stop had occurred and they were looking at the bus driver's information, at the point that Mr. Haynes says, well, can I leave? And they said no. And then he asked, when he's ordered down, he's immediately saying, I don't consent to any search. And the law enforcement officer is saying, well, there's marijuana on the bus. At the same time, Mr. Haynes can see another individual who had just been pulled off the bus, subject to an intrusive frisk. And then he repeatedly tries to say, I don't consent. And the officer's asking him questions, well, do you have anything illegal on you? So at this point, it's not just ordering somebody out of the car because for safety reasons, as is often the case in traffic stops under, when relying on the principal in Maryland versus Wilson, this is just simply different. But he wasn't required to remove anything from his pockets, was he? It was, he wasn't told, remove it from your pockets, but it was clear that a search was coming. And this is where I indicated he wasn't going to, he wasn't going to consent to a search, but he voluntarily removed the roach from his pocket. I would disagree with that, Your Honor. And the argument that this is consent, even though he complied with what our position is, was a police demand at that point, that doesn't indicate consent, let alone voluntary consent. Now, the officer... But don't you have to show coercion to get around the fact that he voluntarily did it? I don't know... Is it just enough to say that, well, he knew a search was coming, or he believed a search was coming? So that's... Don't you have to establish coercion? I don't know if you have to establish coercion, but I think this is where the Jones case comes in. Is there case law on the distinction? So there's the Jones case in this, from this court, cited in our briefs, and there, there was a situation that I think is similar to here, and that an individual did not consent to a search because law enforcement officers had said, well, we're bringing a canine unit in. And then, eventually, when asked if they could search, the individual stated, okay. There, this court said, you can't call that consent, involuntary consent, when someone's already been told a search is happening, whether you like it or not. And I think that's the circumstances that we have here in Mr. Haynes' case. Yeah, but then there was a search in Jones. There wasn't a voluntary... sort of a revocation of I don't consent. Right. Oh, okay. I don't think that's a material distinction, the idea of whether the law enforcement officer reached into the pocket, or Mr. Haynes, because he's being told he's being searched no matter what, takes it out. The distinction is the officer didn't do anything. The officer indicated to Mr. Haynes that he... Until it was in plain view. So the officer had done something. The officer had ordered him off the bus and made it very clear to Mr. Haynes that he was going to be searched, and that it was... What did he say that was the clear indication, you are going to be searched? So there was no direct statement like that. But the circumstances and the back and forth indicate that a search was going to happen. Another individual had already been pulled off the bus and was being searched right outside the door. When Mr. Haynes tried to say I don't consent, the officer didn't say too bad, or no, I'm not going to accept that. But the officer's responses indicated, sorry, you don't have a choice. The officer said things like, well, sorry, there's marijuana on this bus. And then the officer's making statements when Mr. Haynes indicates, well, I don't have anything illegal on me. The officer states, well, I've been lied to before. And I don't think you need that direct, no, you're being searched, no, there is no consent, when it's clear from the situation and the back and forth and just the circumstances of this interaction that he was going to be searched. And that was, he didn't have a choice, he couldn't refuse, and it was inevitable. So even though there wasn't that direct statement, our position is that, and even the district court acknowledged, it's clear what was happening here. And Mr. Haynes was clearly going to be searched under these circumstances. And what's your best case for that? For, that would be the Jones case that I've cited. And it was unclear to me, but as far as just particularly suspicion itself, kind of going back to the initial seizure, there was insufficient evidence that Mr. Haynes was using marijuana. And looking at these cases with requiring particular suspicion when you've got multiple people, it seems to be on a spectrum. But the hallmark is always reasonableness. It seems like there's- Now we're talking about the situation before he pulled the- Yes. The joint or whatever it was out of his pocket. I'm going back, circling back to the- Because once he does that, now we're- Yes. At the point of that- That's different. Yes. Yes. But going back to whether there's grounds to just pull him off the bus and continue the seizure, there's a spectrum on these cases of particular suspicion. And on one end, there's the Sykes case from the circuit, and you have different cases where it's just a traffic stop, and there might be multiple people in the car, and you're not sure who is either engaged in drug trafficking or whatever it may be. But if there's not very many people, then it's proper for law enforcement officers to seize all of those people. At the other end of that spectrum, you have the Ybarra case, which is where everyone is in a bar. They don't really have a reason to suspect the people in the bar, but they do know that someone there is engaged in drug trafficking. Our position is that these circumstances fall more in line with Ybarra, and that this is a party bus. This is kind of like a bar on wheels. There's 30 people in this bus. It's not like a smaller, confined situation like you had in Sykes, where people know each other, they might be engaged in the same activity. This is a larger group of people, where they might not know each other. And even if they do smell marijuana, it doesn't indicate that everyone is involved, and everyone knows it's happening. So because of that, this association argument that the government makes, we assert is weak. And also that the video itself, Mr. Haynes' actions, he's looking around, he picks up a water bottle, that doesn't rise to any indication that he's using marijuana. So if there are no, well, I do briefly want to touch on the sentencing issue. The district court abused its discretion in sentencing here because it punished Mr. Haynes for asserting his right to trial. And I acknowledge that it's quite clear under the circuit's case law that defendants can get a benefit for pleading guilty, and that the guidelines account for this. But this circuit's case law, the Ninth Circuit case is cited in our brief, acknowledged that a line can be crossed. And it's important that district court judges, when they're sentencing someone, don't indicate or appear that they're punishing someone for exercising a constitutional right. And here we assert that line was crossed. The language was harsh, and the district court did acknowledge, well, you have the right to go to trial, but seemed to indicate the only reason he was not getting a lesser sentence was not only because he went to trial, but because he didn't cooperate. And our position is that establishes that the sentence was substantively unreasonable, and he should be sent back for resentencing. If there are no immediate questions, I would reserve the remainder of my time. Thank you, Ms. Quick. Mr. Call? May it please the court, counsel, like Ms. Quick, I will focus on the two questions that she focused on, the search and the sentencing issue, although I, of course, would answer any questions the court has about the other issues that are raised in this appeal. This traffic stop and the subsequent events took a total of about eight minutes, as indicated by the district court, and that was based on the district court's review of the officer's video. I'm not sure why that matters to the precise issues argued. Well, it matters in that the district court indicated that the officers did not unduly delay going about their business and handling the circumstances of the traffic stop. Additionally, I would point out that if they didn't act reasonably in some kind of a coerced search that produced evidence, whether it happened in 30 seconds or 30 minutes doesn't really matter, does it? Fair enough, Your Honor. I would move on to the fact that the officers immediately smelled marijuana from the open windows of the bus as they approached, so while they were contacting the passengers and contacting the driver of the bus, they also had the right to investigate the additional criminal activity that was evident. Was everyone that was exiting the bus and instructed to do so being searched? I don't think the record indicates whether they were or not. I think the record that was made in the district court and that was made also in the Iowa proceedings that were taken into consideration by Judge Rose focused on the activities with respect to Mr. Haynes, and there was an indication that another person on the bus who had been seen passing something back and forth had been taken off the bus prior to Mr. Haynes. I think that's what Ms. Quick was referring to in her argument here this morning. When it went into higher gear with Mr. Haynes, the government's position is that the officer first had reasonable suspicion. I'm having a lot of trouble from your brief distinguishing this from Ybarra. There are three or four things that we think distinguish Ybarra. Ybarra talks about the mere proximity to other people without more not being ... Yeah, but what's the more? Your brief says, well, he was with a bunch of other gangsters. Well, okay, but ... He was engaged in ... Most people that go to a bar are with friends that are there to watch a game or to gamble illegally or whatever. Well, Ybarra made no gestures indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband, and said nothing of a suspicious nature to police officers. In our view, viewing the record as found by the district court, those three things all occurred. Say that again. You said that so fast and it didn't sound ... When I thought I heard it, it didn't make sense. Ybarra, and I'm quoting from Ybarra and showing the distinctions, Ybarra made no gestures indicative of criminal conduct. He made no movements that might suggest an attempt to conceal. He said nothing of a suspicious ... But our defendant looked around outside the window and stuff. Judge Rose found that this was beyond normal nervous, I think is the way she phrased it when she made her ruling. She found the officer's testimony that the defendant, Mr. Haynes, appeared to be engaged in furtive movements as credible, and this court, of course, must accept those findings. Additionally ... That may be them. No, we don't accept the finding. We review it for clear error. If it's not explained, we review de novo whether it's adequate under the Fourth Amendment. But, Judge Rose's finding that the furtive conduct occurred ... Okay, based on what? Based on whose testimony? Based on the testimony of Officer Hardin, as well as the review of the videos, although it was dark and so the videos don't show everything that Officer Hardin testified about, and the district judge acknowledged that. But this was, and again, why I referenced the eight minutes, I mean, this wasn't strictly a traffic stop anymore. It was also an investigation into the presence of marijuana on that bus, and that's something that the officers ... But was there any evidence that everyone on the party bus was in the same party? I would guess the contrary.  We got them tooling around downtown Minneapolis all the time, and you don't have to make a reservation for your wedding party or whatever. Well, I think here the police ... Is this any different? I think it is. There's evidence that this was a group of, the police believe, were gangsters that reserved, so to speak, the party bus for this trip. I think based on the police's monitoring of Snapchat, for example, led them to believe that this group of gang-affiliated people ... Yes, but was this group the only bunch on the party bus? There's no indication that there was anybody else on the party bus, unassociated. Was there proof that there wasn't? I think the record is ... How many people were on the bus? Somewhere between 25 and 30 people were on the bus. And they were all gangsters? The record ... Is there evidence that would permit a finding they were all gangsters or not to the contrary? I think not to the contrary would be the way to answer that. Well, that just doesn't make sense to me. First of all, I can't believe a gang of 25 or 30 would make themselves so prominent. Well, those are the circumstances that ... Well, I know, but you see, then if I'm right, the record doesn't create an inference or permit a finding that only the gangsters were on the bus, then they needed something to raise a reasonable suspicion that Haynes was one of the gangsters and not one of the casual party goers. Well, the reasonable suspicion was based, again, on ... The furtive glances, anything other than the furtive glances. Yes, in addition, the conversation that he had with the officer where he is immediately wanting to know, can I move, can I get off the bus, suggesting to the officer that this ... I'm not consenting. Oh my goodness, I'm exercising my constitutional right. Well ... Would he have been free to leave? He was not free to leave until he was escorted off the bus and he ... And searched. And we ... Well, we never get to that point because he takes the marijuana out of his pocket and once he takes the marijuana out of his pocket, there is a basis for a search incident to arrest. Well, if he's been seized as opposed to simply ordered off the bus to expedite and implement a traffic stop, then it's different even before he empties his pocket, isn't it? There are two things going on. It's not just the traffic stop. It's also the investigation into the use of marijuana. Yes, but I don't understand the suspicion. I read your brief and I say, well, a furtive glance doesn't make somebody a gangster. I'm sure people in the bar in Ybarra were making furtive glances or laughing at the ... during ... whatever. Well, I mean, as I understand what the Supreme Court said in Ybarra, it's the association or the proximity without more and ... Mere presence. Or you've got to have a lot more than mere presence. We're arguing there's more than mere presence. I don't see the more here except for an officer testified while he made furtive glances. Well, I think he made furtive movements. He's wiggling in his seat. He's ... Oh, my goodness. Asking to move elsewhere in the bus, and those were facts that the district court found were sufficient to provide reasonable suspicion. And once we get to reasonable suspicion, then the Terry pat-down during which the officer felt the gun was permissible. Moving on to the sentencing issue, the government suggests that reading the record as a whole indicates that the district court certainly properly could point out that the fact that the defendant didn't plead guilty meant that he would not receive credit for acceptance of responsibility. That's not an impermissible trial penalty. The fact that some defendants receive benefit by pleading guilty means that those who choose to go to trial will not get that same benefit. The district court talked about all of the 3553A factors to include the defendant's very histories, crimes of that nature that led to a need to protect the public from this defendant. This defendant should not have been tooling around downtown Des Moines with a loaded firearm, that he shouldn't be anywhere near firearms given his history, given the fact that he'd only been out of prison for somewhere between, I think, 14 to 18 months from his last incarceration to the time that he was arrested in this case. So the government does not think that there was any sentencing error and believes that the guideline sentence that was imposed should be affirmed. Unless the court has any further questions about the other issues, the government would rely on this brief and would ask that the judgment be affirmed. Thank you, Mr. Call. Ms. Quick. So first I want to answer Judge Smith's question. Everyone was ordered off the bus eventually and patted down. It wasn't discussed at the federal district court hearing, but it was brought out in the state district court hearing, the motion to suppress there. That's the trial transcript that was filed as Defendant's Exhibit A, and it's on pages 59 through 60, that eventually everyone was ordered off the bus and patted down. But turning to the idea of reasonable suspicion and whether the officers had a reasonable suspicion that Mr. Haynes was using marijuana, the officer did rely on his statements of can I leave and I don't consent and called it red flags. That's improper to rely upon that. And that's consistent with what was argued and rejected in the Sykes case. In the Sykes case, part of what they had argued was, and there was a dispute in that case, our position was that he had just walked away from law enforcement officers as they were walking into the laundromat. The government said he was walking briskly or running away. There the court, this court was very clear that they don't take anything into account with someone just walking away from officers, because at that point they're free to leave. And so it shouldn't have any bearing in this court's or any court's determination of whether someone is committing a crime by simply asking if they can leave and refusing consent. And the remaining factors that the government points to, this idea of nervousness, yes, the district court did say, well, he was nervous, and the officer pointed to, well, I thought he was nervous and there was furtive movements, but there's a video here, and a video here which clearly details what happens and that there wasn't furtive movements. They pulled off the individual that they thought was shoving things under the seat and they thought was passing something to someone else and had the marijuana. That person is the individual they thought had furtive movements. When asked at the suppression hearing, well, what was he doing? The only examples of nervousness were he was looking around, which everyone was. Many passengers on the bus were asking, why did you stop us? What is happening? It's consistent with the situation you have when multiple officers are surrounding a bus. And the other action that he took that's captured on Defendant's Exhibit C, Officer Hardin's body cam video, is that a water bottle was rolling around because it's pretty, this bus was wide open, and other individuals are drooping down to pick it up, and eventually Mr. Haynes is the individual that drops down, picks it up, and sets it up. Those don't indicate any kind of nervousness or that an individual might be involved in marijuana usage. And consistent with the idea of pulling him off just because law enforcement officers here pulled everyone off, they didn't just order Mr. Haynes off the bus. They ordered the two people up front to start coming down. So this indicates there isn't reasonable suspicion that Mr. Haynes was involved in using marijuana. I don't understand the relevance of that. I mean, it seems to me the difficult question for you is what was the Fourth Amendment violation before he emptied his pockets? If getting everyone off the bus was okay, you're kind of reduced to, well, they made, their conversation made him think he was going to be searched. Yes. And I don't, I don't, the bar doesn't give, doesn't get you home free on that argument. The case law we cite for the principle that compliance with a police demand is not consent. And our position is that this back and forth indicated that... No, it's not consent, but it's not an unreasonable search. Our position is that it is an unreasonable search. If they don't have grounds to... Well, what's the case for that? You cite cases where the search was unreasonable because it was based on an invalid claim of consent, a defense of consent. But here they're, what's the search? So the search, it would be like if an individual is told you're going, I'm going to look in your back. Like if there's a situation where an individual is like, I want to look in your trunk. And if the defendant went back and opened up the trunk, I will still assert, even though the defendant is the person taking the action to allow that search to happen, the search is still happening because the officer has indicated that this is going to happen. Now as to an exact case where it's something like that, I don't have that on hand. That reasoning prevailed. It's a close, it's a difficult line to draw. Yes, and our position is that... But when there's no, if ordering them off the bus is not an unconstitutional seizure, then you've got to get to the search element of the Fourth Amendment, and physically it didn't happen. So our initial position is that ordering off the bus under these circumstances wasn't constitutional because it wasn't like Maryland v. Wilson. So we're not conceding that point necessarily because he had asked if he could leave and was told no before that. So if there are no further questions, we would ask this Court to reverse and remand. Thank you. Thank you, Ms. Quick. Thank you also, Mr. Call. We appreciate your presentation.